606 So.2d 618 (1992)
Jim SMITH, etc., Appellant,
v.
AMERICAN AIRLINES, INC., et al., Appellees.
No. 80438.
Supreme Court of Florida.
October 13, 1992.
*619 Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for appellant.
Barry Richard, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, for appellees American Airlines, Inc., Delta Airlines, Inc., Flagship Airlines, Inc., Northwest Airlines, Inc., United Air Lines, Inc. and USAIR, Inc.
John R. LaCapra, Coral Gables, and Cass D. Vickers and Robert S. Goldman, Messer, Vickers, Caparello, Madsen, Lewis, Goldman & Metz, P.A., Tallahassee, for appellees Florida Ports Council, Inc., Panama City Port Authority, Port Everglades Authority, Gatx Terminals Corp. and Hvide Shipping, Inc.
S. LaRue Williams, Kinsey Vincent Pyle, P.A., Daytona Beach, amicus curiae, for Terence M. Brown.
GRIMES, Justice.
Jim Smith, acting in his official capacity as Secretary of State, appeals a circuit court's order finding the ballot summary for Proposition 7, scheduled to appear on the November 1992 general election ballot, to be fatally defective. The First District Court of Appeal certified that this case presents a question of great public importance requiring immediate resolution by this Court in light of the upcoming election. We have jurisdiction under article V, section 3(b)(5) of the Florida Constitution.
Article XI, section 6 of the Florida Constitution creates the Taxation and Budget Reform Commission, whose mandate is to review the revenue needs and expenditure processes of the state, recommend statutory changes, and propose revisions to the constitution. In May, 1992, the Commission filed a proposed amendment, Proposition 7, which seeks to add a subsection to article VII, section 3 of the Florida Constitution. The text of the amendment provides as follows:
(e) Effective January 1, 1993, leaseholds and other possessory interests created after November 5, 1968, in property of the United States, of the state or any of its political subdivisions, municipalities, authorities, districts, agencies or other public bodies corporate of the state, shall be taxed as real property for ad valorem tax purposes. All such leasehold interests created prior to November 5, 1968, including renewal options and extensions thereof provided in the initial lease, shall be taxed as intangible personal property.
The Commission also prepared a ballot summary for Proposition 7, as required by section 101.161, Florida Statutes (1991). The summary provides as follows:
Subjects leaseholds in government owned property entered into since 1968 to ad valorem taxation. All leaseholds in government owned property entered into prior to 1968, and subsequent renewal options and extensions provided in the initial lease, shall be taxed as intangible personal property.
Appellees filed a complaint in the circuit court alleging in relevant part that the ballot summary was defective in that it failed to comply with section 101.161 and that the provisions of Proposition 7 violate the right to equal protection of the laws.[1] The circuit court ruled that the ballot summary was defective and therefore found it unnecessary to address the equal protection claim. In reaching its conclusion, the circuit court found four categories of defects: (1) the summary does not explain that the tax rate on post-1968 leaseholds will be shifted from the intangible rate to the much higher real property rate and fails to give notice that the taxing power is shifted from state to local government; (2) the summary is misleading, in that it implies that pre-1968 leaseholds are to be taxed as intangible personal property for the first time and fails to inform the voter *620 that the purpose of the special treatment for pre-1968 leaseholds is to exempt a select class of taxpayers from the newly imposed and substantially higher real property rate; (3) by using the terms "since 1968" and "prior to 1968," the summary gives the misleading impression that leaseholds created during 1968 are not taxed at all and fails to inform the voter of the amendment's effect on leases entered into during that year; and (4) the amendment itself is unclear as to whether the amendment affects the historic tax exemptions on property used for public purposes. The circuit court's final judgment enjoined the Secretary of State from placing Proposition 7 on the November 1992 general election ballot.
Section 101.161(1) provides, in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot... . The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.
Thus, the statute requires that the ballot summary for a proposed constitutional amendment "state in clear and unambiguous language the chief purpose of the measure." Askew v. Firestone, 421 So.2d 151, 155 (Fla. 1982). The summary must give voters sufficient notice of what they are asked to decide to enable them to intelligently cast their ballots. Id. However, the summary is not required to explain every detail or ramification of the proposed amendment. Advisory Opinion to the Attorney General  Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla. 1991); Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla. 1986).
The chief purpose of Proposition 7 is to subject leaseholds in government-owned property to ad valorem taxation at the real property tax rate for leases entered into since November 5, 1968, and at the intangible personal property tax rate for leases entered into before November 5, 1968. However, the ballot summary specifies only that post-1968 government leaseholds will be subject to ad valorem taxation and makes no reference to taxation as real property. "Ad valorem" is defined by section 192.001, Florida Statutes (1991), as "a tax based upon assessed value of property." The statutory definition of ad valorem is consistent with its general dictionary definition, "imposed at a rate percent of value," Webster's Ninth New Collegiate Dictionary 58 (1988); "of a property tax: levied according to assessed value," Webster's Third New International Dictionary 30 (1976). Thus, the term "ad valorem" tells the voter nothing about the actual change to be effected because it applies to both real and personal property.
Leaseholds in government-owned property used for residential and commercial purposes are currently subject to ad valorem taxation as intangible personal property. § 196.199(2)(b), Fla. Stat. (1991). Effective January 1, 1993, the intangible tax rate will be raised to its constitutional maximum of two mills on the dollar. Art. VII, § 2, Fla. Const.; ch. 92-319, Laws of Fla. Yet, Proposition 7 would subject such leaseholds to ad valorem taxation as real property at a rate of up to a constitutional maximum of thirty mills. Art. VII, § 9(b), Fla. Const. By failing to refer to taxation as real property, the ballot summary does not advise the voter that the taxes on post-1968 leaseholds of government-owned property could increase as much as fifteen times the current rate.
In support of the ballot summary, appellant argues that it is common knowledge that ad valorem taxes include taxes on real property.[2] Therefore, because the second sentence of the summary specifically informs *621 voters that pre-1968 leases will be taxed as intangible personal property, appellant suggests that the only logical conclusion to be drawn is that post-1968 leases will be taxed at a different rate than pre-1968 leases  obviously the real property rate.
While we agree that voters may be presumed to have the ability to reason and to draw logical conclusions, we do not believe that the ballot summary here is written clearly enough for even the more educated voters to understand its chief purpose. The summary not only assumes an extensive understanding of ad valorem taxes, but also requires the voter to infer a meaning which is nowhere evident on the face of the summary itself. A voter who understands that ad valorem taxation is possible at different rates would be unable to discern the purpose of the amendment from the summary language. All the summary clearly states is that pre-1968 leases will be taxed at the intangible personal property rate and that post-1968 leases will be subject to ad valorem taxation. Reading the summary as a whole, a voter could easily conclude that the purpose of Proposition 7 is to constitutionalize ad valorem taxation of post-1968 leases, with the discretion to tax at real or personal property rates left to the legislature. From the second sentence, the voter could conclude that the legislature's discretion with regard to pre-1968 leases is limited  that the amendment mandates that these leases be taxed at the intangible personal property rate.
We also agree with appellant that voters are generally required to do their homework and educate themselves about the details of a proposal and about the pros and cons of adopting the proposal. However, the availability of public information about a proposed amendment cannot be a substitute for an accurate and informative ballot summary. As this Court stated in Askew, "[t]he burden of informing the public should not fall only on the press and opponents of the measure  the ballot title and summary must do this." 421 So.2d at 156.
At best, the ballot summary is ambiguous about its chief purpose and therefore cannot be included on the general election ballot. While we are reluctant to remove proposed amendments from a vote of the public, we are required by section 101.161 to ensure that the ballot summary clearly communicates what the electorate is being asked to vote upon. This ballot summary fails to do so.
Because we find that the summary fails to communicate even the chief purpose of the proposed amendment, we need not decide which, if any, of the other omitted details and ramifications noted by the circuit court is material information necessarily included in a valid summary. See Term Limitations, 592 So.2d at 228 ("A ballot summary may be defective if it omits material facts necessary to make the summary not misleading."). We do note, however, that this ballot summary is far from a model of clarity and easily could have been drafted to avoid most of the problems noted by the court below. We recognize that the seventy-five word limit on ballot summaries prevents the summary from revealing all the details or ramifications of the proposed amendment. Accordingly, we have never required that the summary explain the complete details of a proposal at great and undue length, nor do we do so now. However, the word limit does not give drafters of proposed amendments leave to ignore the importance of the ballot summary and to provide an abbreviated, ambiguous statement in the hope that this Court's reluctance to remove issues from the ballot will prevent us from insisting on clarity and meaningful information.
We are cognizant of the fact that our decision in this case effectively renders the Commission's efforts to improve Florida's tax system through the provisions of Proposition 7 futile and prevents the people of Florida from even having the chance to vote on the merits of the proposal. Neither party argues that this Court has the authority to independently rewrite the ballot summary to conform to the statute, and our independent research has revealed no authority to do so. In fact, section 101.161 *622 specifically provides that the wording of the ballot summary shall be embodied in the Commission proposal itself. In order to prevent this problem from recurring in the future, we urge the legislature to consider amending the statute to empower this Court to fix fatal problems with ballot summaries, at least with respect to those amendments proposed by revision commissions or the legislature. See Askew, 421 So.2d at 157 (Overton, J., concurring).
Given our conclusion that the ballot summary for Proposition 7 is fatally defective, we find it unnecessary to address the equal protection issue or the issue appellees raise as to compliance with article XI, section 6 of the Florida Constitution. The final judgment of the circuit court is affirmed, and Proposition 7 is hereby stricken from the November 1992 general election ballot.[3] No motion for rehearing will be entertained.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, J., recused.
NOTES
[1] Appellees voluntarily dismissed counts II (violation of Sunshine Law) and V (federal preemption) below. The circuit court dismissed count III (Proposition 7 not adopted in compliance with article XI, section 6, Florida Constitution).
[2] In support of this proposition, appellant quotes from Black's Law Dictionary, which states in the definition of ad valorem tax that "[t]he more common ad valorem tax is that imposed by states, counties, and cities on real estate." Black's Law Dictionary 51 (6th ed. 1990). However, as noted by appellees, the definition does not end there, but goes on to add that "[a]d valorem taxes, can, however, be imposed upon personal property," and the term itself means "[a] tax imposed on the value of property." Id.
[3] Because of the shortness of time, it may be that it will be impossible to remove Proposition 7 from all of the ballots. In that event, any votes on Proposition 7 shall be deemed void.