OVERTON, Justice.
In accordance with article V, section 3(b)(10), of the Florida Constitution, and section 16.061, Florida Statutes (1993), the Attorney General has petitioned this Court for an advisory opinion on the validity of four initiative petitions to amend the Florida Constitution. These four proposals were submitted to elector signatories on initiative petitions in a consolidated format. We have joined them for review in this opinion but will address the four proposals separately.
In summary, the first two are revenue limitation provisions that restrict the authority of governmental entities to enact new taxes and user-fees, to increase present tax rates, and to eliminate tax exemptions. The third initiative changes the responsibility of governments in the exercise of their police power by requiring all entities of government to compensate property owners in a manner not now required by the constitution. The fourth initiative eliminates the single-subject requirement for initiative proposals that limit the power of government to raise revenue. The first two initiatives would substantially limit the ability of government to raise revenue, the third would substantially increase the fiscal obligations of a governmental entity if it should exercise its police power functions, and the fourth initiative would make it easier for the public to pass revenue limiting constitutional amendments.
Subsequent to the Attorney General’s filing of these initiatives, The League of Women Voters of Florida, Inc. filed a petition for a writ of mandamus directed to the Secretary of State. That petition asks this Court to, among other things, order the Secretary of State to withdraw his certification of each of the four initiatives proposed by the Tax Cap Committee, principally on the grounds that the signatures were obtained in a misleading manner.
This Court’s role in these matters is strictly limited to the legal issues presented by the constitution and relevant statutes. This Court does not have the authority or responsibility to rule on the merits or the wisdom of these proposed initiative amendments, and we have not done so. Infringing on the people’s right to vote on an amendment is a power this Court should use only where the record shows the constitutional single-subject requirement has been violated or the record establishes that the ballot language would clearly mislead the public concerning material elements of the proposed amendment and its effect on the present constitution.
In summary, and as we will explain in detail in this opinion, we find that the proposals entitled “Tax Limitation,” “Voter Approval of New Taxes,” and “Property Rights” violate either the single-subject or the ballot title and summary requirement, or both, and must be stricken from the ballot. We further find that the proposal entitled “Revenue Limits” is approved for placement on the ballot. Finally, we conclude that The League of Women Voters’ petition for a writ of mandamus should be denied.
As we have explained in prior opinions, our analysis of these proposed amendments is limited to two issues. The first concerns the single-subject requirement, where we must determine whether the proposed amendment violates article XI, section 3, of the Florida Constitution. That provision states that an *490 amendment to the constitution proposed by initiative “shall embrace but one subject and matter directly connected therewith.” Second, we must address the clarity of the ballot language and determine whether the ballot title and summary are misleading. Our responsibility for the clarity of ballot title and summary language is dictated by the provisions of section 101.161(1), Florida Statutes (1993), which states:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the ... proposal_
(Emphasis added.)
In addressing the propriety of proposed constitutional amendments previously submitted through the initiative process, we have developed some basic legal principles to guide the Court in our mandated judicial review. With regard to the single-subject requirement we have stated, “This single-subject provision is a rule of restraint designed to insulate Florida’s organic law from precipitous and cataclysmic change.” In re Advisory Opinion to the Attorney General-Save Our Everglades Trust Fund, 636 So.2d 1336, 1339 (Fla.1994). This provision was established, in part, to prevent “log-rolling,” which forces voters to “accept part of an initiative proposal which they oppose in order to obtain a change in the constitution which they support.” Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984). “Log-rolling” is a practice that requires voters to cast an all-or-nothing vote on a proposal that affects multiple functions or entities of government.
While we have made it. clear that the single-subject test is functional and not locational, we have also emphasized and held that when an amendment “changes more than one government function, it is clearly multi-sub-ject.” Evans v. Firestone, 457 So.2d 1351, 1354 (Fla.1984). Further, and just as important, we have made clear that “how an initiative proposal affects other articles or sections of the constitution is an appropriate factor to be considered in determining whether there is more than one subject included in an initiative proposal.” Fine, 448 So.2d at 990.[1] We explained in Fine that identifying the articles or sections of the constitution substantially affected “is necessary for the public to be able to comprehend the contemplated changes in the constitution.” Id. at 989. It is also important so that the question of the initiative’s effect on other unnamed provisions is not left unresolved and open to various interpretations. See id.
In addressing our responsibility to assure that proposed amendments meet the requirements of section 101.161(1), we have stated that the purpose of this statute “is to assure that the electorate is advised of the true meaning, and ramifications, of an amendment,” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). We have explained that the statute requires the title and summary to be (a) “accurate and informative,” Smith v. American Airlines, 606 So.2d 618, 621 (Fla.1992), and (b) objective and free from political rhetoric, see Evans, 457 So.2d at 1355; Save Our Everglades, 636 So.2d at 1341.
We now turn to each of the subject initiatives in the order in which they were presented to the public on the Tax Cap Committee petition.

Proposed Tax Limitation Amendment

This proposal seeks to create article XI, section 7, of the Florida Constitution. The full text of the proposed amendment provides:
Article XI of the Florida Constitution is hereby amended by creating a new Section 7 reading as follows:
Notwithstanding Article X, Section 12(d) of this constitution, no new State tax or fee shall be imposed on or after November 8, 1994 by any amendment to this constitution unless the proposed amendment is *491 approved by not fewer than two-thirds of the voters voting in the election in which such proposed amendment is considered. For purposes of this section, the phrase “new State tax or fee” shall mean any tax or fee which would produce revenue subject to lump sum or other appropriation by the Legislature, either for the State general revenue fund or any trust fund, which tax or fee is not in effect on November 7, 1994 including without limitation such taxes and fees as are the subject of proposed constitutional amendments appearing on the ballot on November 8, 1994. This section shall apply to proposed constitutional amendments relating to State taxes or fees which appear on the November 8, 1994 ballot, or later ballots, and any such proposed amendment which fails to gain the two-thirds vote required hereby shall be null, void and without effect.
The ballot title for the proposed amendment is:
Tax Limitation: Should Two-Thirds Vote Be Required for New Constitutionally-Imposed State Taxes/Fees?
The summary for the proposed amendment provides:
Prohibits imposition of new State taxes or fees on or after November 8, 1994 by constitutional amendment unless approved by two-thirds of the voters voting in the election. Defines “new State taxes or fees” as revenue subject to appropriation by State Legislature, which tax or fee is not in effect on November 7, 1994. Applies to proposed State tax and fee amendments on November 8, 1994 ballot and those on later ballots.
The Attorney General has written to inform the Court of his opposition to the “Tax Limitation” initiative and suggests that the initiative substantially affects other provisions in the constitution without clearly identifying these provisions and that its language is ambiguous. The initiative is also opposed by The League of Women Voters of Florida, Inc., Common Cause, The Florida Audubon Society, and the American Planning Association. These groups make essentially the same arguments as the Attorney General. In defense of the initiative, the Tax Cap Committee states that the initiative is limited in scope and is not ambiguous.
We find that this initiative fails to meet the single-subject requirement because it combines taxes and fees. The proponents have stated that this initiative is intended to “make it harder to amend the constitution” for both taxes and fees. Specifically, this proposal would require a two-thirds vote (1) to change the methods of general taxation or establish alternative methods of general taxation by constitutional amendment and (2) to change or authorize by constitutional provision an exaction of any new user fee. We have previously stated that tax and user fee provisions may not be joined in a single initiative. See Fine, 448 So.2d at 990-91. “General tax revenue, utilized for governmental operations and user fee revenue, primarily utilized to fund services received by the paying customers, do not have a natural relation and connection as component parts or aspects of a single dominant plan or scheme, and, therefore, are clearly separate subjects_” Id. at 991. Despite our clear pronouncement in Fine, the “tax limitation” initiative improperly attempts to combine provisions concerning both taxes and user fees in a single initiative and, as a result, it violates the single-subject requirement. Because of this finding, we need not address the other issues raised by the opponents.[2]

Proposed Voter Approval of New Taxes Amendment

This initiative petition seeks to amend article VII, section 1, of the Florida Constitution, and provides as follows:
Add this subsection to Article VII, Section 1, two days after voters approve:
() VOTER APPROVAL OF NEW TAXES. No new taxes may be imposed except *492 upon approval in a vote of the electors of the taxing entity seeking to impose the tax.
1. DEFINITION OF NEW TAX. The term new tax, for this subsection, includes the initiation of a new tax, the increase in the tax rate of any tax, or the removal of any exemption to any tax.
2. EMERGENCY TAXES. This subsection shall not apply to taxes enacted, for an effective period not to exceed 12 months, by a three-fourths vote of the governing body of a taxing entity after the governing body has made a finding of fact that failure to levy the tax will pose an imminent and particularly described threat to the health or safety of the public.
The ballot title for the proposed amendment is
Voter Approval of New Taxes: Should New Taxes Require Voter Approval in this State?
The summary for the proposed amendment provides:
This provision requires voter approval of new taxes enacted in this State. New taxes include initiation of new taxes, increases in tax rates and eliminating exemptions to taxes.
It does not limit emergency tax increases, lasting up to 12 months, which are approved by a three-fourths vote of a taxing entity’s governing body. The amendment is effective two days after voters approve.
With regard to this initiative, the Attorney General suggests that it: (1) presents a form of “log-rolling” in that a voter is not given the opportunity to disapprove of the initiative’s application to state, local, or regional taxes, but is forced to accept all of these separate applications or none of them; (2) substantially alters or performs the functions of multiple branches of government because it mandates voter approval of new taxes at state, regional, and local levels; (3) substantially affects other provisions of the constitution without identifying these other provisions; and (4) does not adequately inform the voters of its impact on state and local government and the services provided by each.
With regard to the ballot language, the Attorney General suggests that the proponents of the initiative may not have properly informed the voter of the legal effect of the initiative. He further notes that the title of the initiative may confuse the voters by implying that new taxes would be imposed if the amendment passes and that the title and summary are misleading because they do not clearly indicate that the initiative applies to local taxing entities as well as the state. The other opponents of the initiative make similar arguments concerning the single-subject rer quirement and ballot title and summary.
In response, the proponents of the initiative assert that the “Voter Approval of New Taxes” initiative complies with the single-subject requirement because its sole objective is to require that all laws imposing new taxes be subject to approval of the voters of the taxing entity. They assert that only one section of one article of the constitution and only one function of government is affected and, consequently, that there is no log-rolling and that the initiative fully complies with the single-subject mandate.
While a debatable issue exists as to whether this “Voter Approval of New Taxes” initiative violates the single-subject requirement by dealing with three subjects, we need not address that claim because this initiative substantially affects specific provisions of the constitution without identifying those provisions for the voters, in violation of the principles we established in Fine.
First, this initiative substantially affects article VII, section 9, a cornerstone of home-rule power. That existing constitutional provision reads as follows:
Section 9. Local taxes.—
(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution.
(b) Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors who are the owners of freeholds *493 therein not wholly exempt from taxation, shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; for water management purposes for the northwest portion of the state lying west of the line between ranges two and three east, 0.05 mill; for water management purposes for the remaining portions of the state, 1.0 mill; and for all other special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.
(Emphasis added.) Section 9 is both a grant and a limitation on the authority of local governmental entities to tax. It is directly interrelated to the home-rule powers contained in article VIII, and provides that, when authorized by law and without voter approval, counties may tax for county purposes up to ten mills; municipalities may tax for municipal purposes up to ten mills; and school boards may tax for school purposes up to ten mills. Provisions are also made for water management districts and special districts. In an analysis of the proposed Constitution of 1968 prepared at the request of the legislature, the Legislative Reference Bureau stated:
Millages are limited to 10 mills for all county purposes, ten mills for municipal purposes, and ten mills for school purposes. Bond millages are excluded, and additional millages without limitation are permitted if approved by freeholders paying taxes. Counties providing municipal services may be authorized to levy additional taxes.
In State v. Dickinson, 280 So.2d 130, 135 (Fla.1969), this Court approved that interpretation of this provision, stating the following:
It is our view that both the legislature and the people intended to limit ad valo-rem taxation for county and municipal purposes in all areas of the State to a twenty-mill maximum beyond which millages could be raised but only if approved by referendum of the tax-paying property-holders directly affected.
(Emphasis deleted.) While some local governmental entities are currently close to the ten-mill cap, other governmental entities have considerable leeway left in their taxing authority under this provision. There is no question that this proposed initiative amendment eliminates the ten-mill authorization without voter approval. Nothing has been said in this proposal concerning this substantial change in article VII, section 9, oi the present constitution. It is, as previously stated, an important part of the home-rule powers granted to local government by our present constitution. In Fine, we expressly stated that an initiative could not substantially affect existing provisions of the constitution without identifying such provisions. 448 So.2d at 989. We stated that identifying articles or sections of the constitution substantially affected is an important factor and “is necessary for the public to be able to comprehend the contemplated changes in the constitution.” Id. The ‘Voter Approval of New Taxes” initiative substantially affects article VII, section 9, without identifying it.
In addition, this provision also substantially affects the following provisions in the Constitution: (1) article VII, section 1(a), which confers upon the legislature, without the requirement of a referendum, the power to impose taxes by general law, e.g., sales taxes, cigarette taxes and liquor taxes; (2) article VII, section 1(b), which confers upon the legislature the authority to impose taxes without a referendum on the operation of motor vehicles, boats, airplanes, trailers, trailer coaches, and mobile homes; (3) article VII, section 2, which provides legislative authority to impose some forms of intangible personal property taxes without a referendum; (4) article VII, section 5, which provides, with restrictions, legislative authority to impose estate and inheritance taxes to the extent that they are credited towards the federal tax, and, in addition, this section provides for a corporate income tax up to 5% and authorizes a rate in excess of 5% if approved by three-fifths vote of both houses *494 of the legislature; and (5) article VII, section 7, which provides legislative authority to impose pari-mutuel taxes. Each of these provisions was placed in the constitution for a distinct and specific purpose. They will all be substantially affected by this initiative proposal. None have been identified and, consequently, this proposed initiative violates the principle we clearly established in Fine that the electorate must be advised of the effect a proposal has on existing sections of the constitution.
We also agree with the attorney general that the ballot title and summary are misleading because of the use of the question to describe this initiative. It is misleading in this instance because it implies that there is presently no cap or limitation on taxes in the constitution at the present time when, in fact, there is such a limitation for local governmental entities in article VII, section 9, and the inheritance and income tax in article VII, section 5(b). For the reasons expressed, this proposal must be stricken from the ballot.

Proposed Property Rights Amendment

This proposal seeks to amend article I, section 2, of the Florida Constitution. The full text of the proposed amendment provides:
Insert the underlined words in Article I, Section 2:
Basic Rights—All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life [and] liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion or physical handicap. Any exercise of the police power, excepting the administration and enforcement of criminal laws, which damages the value of a vested private property right, or any interest therein, shall entitle the owner to full compensation determined by jury trial with a jury of not fewer than six persons and unthout prior resort to administrative remedies. This amendment shall take effect the day after approval by the voters.
The ballot title for the proposed amendment is:
Property Rights: Should Government Compensate Owners When Damaging The Value Of Homes Or Other Property?
The summary for the proposed amendment provides:
This amendment entitles an owner to full compensation when government action damages the value of the owner’s home, farm, or other vested private property right or interest therein. Excepts administration and enforcement of criminal laws. Owners—including natural persons and businesses—are entitled to have full compensation determined by six-member jury trial without first having to go through administrative proceedings. This amendment becomes effective the day after voter approval.
The Attorney General and other opponents of the initiative suggest that this proposal will substantially alter the ability of multiple governmental entities to perform their functions and that the ballot title and summary of this initiative are misleading and ambiguous. In response, the proponents of the initiative assert that there is no single-subject violation and state that, although the “Property Rights” initiative will affect multiple branches of government, it will not substantially alter or perform the constitutional functions of any of them because government is, in their words, “always free to refrain from actions which would damage vested rights and thus avoid any compensation claim.”
We find that the “Property Rights” initiative violates the single-subject requirement because it substantially alters the functions of multiple branches of government. Cf. Save Our Everglades, 636 So.2d at 1340 (“Although a proposal may affect several branches of government and still pass muster, no single proposal can substantially alter or perform the functions of multiple branches -”). This initiative not only substantially alters the functions of the executive and legislative branches of state government, it also has a very distinct and substantial *495 affect on each local governmental entity. The ability to enact zoning laws, to require development plans, to have comprehensive plans for a community, to have uniform ingress and egress along major thoroughfares, to protect the public from diseased animals or diseased plants, to control and manage water rights, and to control or manage storm-water drainage and flood waters, all would be substantially affected by this provision. We agree with the opponents of the initiative that the ability of the legislature to comply with the directive in article II, section 7 (“It shall be the policy of the state to conserve and protect its natural resources and scenic beauty. Adequate provision shall be made by law for the abatement of air and water pollution and of excessive and unnecessary noise.”), is substantially affected. We also note that the initiative transfers all administrative remedies for police power actions that damage private property interests from the executive branch to the judicial branch. Given this substantial effect on the executive, legislative, and local branches of government, we find that the “Property Rights” initiative violates the single-subject requirement.[3]
We have made clear that the ballot title and summary must advise the electorate of the true meaning and ramifications of the amendment and, in particular, must be accurate and informative. See, e.g., Smith, 606 So.2d at 621. The “Property Rights” ballot title and summary do not properly advise the voters, and it is not accurate and informative. This proposal would result in a major change in the function of government because it would require all entities of government to provide compensation from tax revenue to owners or businesses for damages allegedly caused to their property by the government’s exercise of its police powers. Because most true police power actions of government are not now compensable, the fiscal impact of this proposal would be substantial. The proponents of the initiative acknowledge that the police powers affected by this initiative are broad and, in their words, “take any number of forms, such as flooding, deprivation of access, environmental regulation and permitting, zoning ordinances, and development ex-actions, among others.” The ballot title and summary are devoid of any mention of these consequences.
The Attorney General suggests that, while the summary could lead a voter to believe that the initiative is limited to real property interests, the text of the initiative is not so limited. He notes that the initiative’s language would mandate compensation for the shareholders of a corporation whenever the state has successfully prosecuted an antitrust suit because that suit would adversely affect the value of the company’s stock. The Attorney General further notes that the term “owner,” as used in the summary of the proposed initiative, includes natural persons and businesses; yet, the text of the proposed initiative is silent as to the meaning of the term “owner” and includes no reference to businesses. He concludes that, as a result of these circumstances, the ballot title and summary are misleading. We agree with the Attorney General and find that the ballot title and summary are misleading and ambiguous.
Accordingly, we find that the proposed “Property Rights” initiative violates both the single-subject and ballot title and summary requirements and must be stricken from the ballot.

Proposed Revenue Limits Amendment

This proposal seeks to amend article XI, section 3, of the Florida Constitution. The full text of the proposed amendment provides:
Insert the underlined words in Article XI, Section 3, immediately after voters approve, for amendments effective thereafter:
INITIATIVE. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one sub *496 ject and matter directly connected therewith.
The ballot title for the proposed amendment is:
Revenue Limits: May People’s Amendments Limiting Government Revenue Be Allowed To Cover Multiple Subjects?
The summary for the proposed amendment provides:
This provision would expand the people’s rights to initiate constitutional changes limiting the power of government to raise revenue by allowing amendments to cover multiple subjects. This provision is effective immediately after voter approval for amendments effective thereafter.
This proposed constitutional amendment would eliminate the single-subject requirement of article XI, section 3, for initiatives that deal solely with limiting “the power of government to raise revenue.” The single-subject requirement would remain for all other types of initiative petitions and for petitions that combine revenue limitation and other subjects.
The Attorney General does not suggest that this initiative violates the single-subject requirement, but does note that the ballot title and summary may not give the voter fair notice of the initiative’s purpose. He asserts that the ballot title and summary do not inform the voter that the real objective of this initiative petition is to permit “log-rolling,” at least in the context of initiatives that limit revenue. He further notes that the initiative would effect a fundamental change in the procedures for amending the constitution by the voters and that the title and summary fail to mention “log-rolling” as a collateral consequences of the initiative.
The League of Women Voters, and other opponents, argue that the proposal violates the single-subject rule in that it presents three distinct subjects under the broad heading of “revenue” coupled with a fourth subject pertaining to amending the constitutional amendment process. With regard to the ballot title and summary, the opponents assert that each are misleading because neither mentions that the initiative will alter the single-subject rule in article XI, section 3. They contend that the true purpose of the proposal is to abrogate the constitutional protections of the single-subject rule and that nowhere in the ballot title or summary is this purpose revealed. As a result, the opponents contend that the title and summary are misleading.
We reject the contentions that this initiative violates the single-subject requirement, and conclude that it substantially alters just one section of the constitution. The one significant question for the Court to resolve is whether the ballot title and summary are misleading, as suggested by the Attorney General and other opponents of the initiative. While the use of a question in the ballot title is not per se misleading, it does, particularly in this context, raise an issue of whether the title is sufficiently informative. Nevertheless, we conclude that, while the format and content of this ballot title bring it exceedingly close to being misleading, we find that it is not such that we should remove the initiative from the ballot.[4]
Accordingly, we find that the initiative entitled “Revenue Limits” complies with the single-subject and ballot title and summary requirements and should retain its place on the ballot.

Petition for Writ of Mandamus

We deny The League of Women Voters of Florida, Inc.’s petition for a writ of mandamus, in which the League sought to require the Secretary of State to disapprove the verified signatures on the petitions and to require their resubmission. The League sought this petition principally because the consolidated petition format used to obtain the signatures for the four Tax Cap Committee petitions was not approved by the Secretary of State and because the petition form was allegedly misleading to the electorate.
We deny mandamus relief, and find that a writ of mandamus is not an appropriate rem *497 edy under the circumstances of this case. While the joining of these four initiative petitions in a joint petition format raises important questions concerning the integrity of the initiative process, we conclude that this is a question the legislature should resolve by appropriate statutory provisions, and that the relief requested in the mandamus is not a matter within the mandated authority of the Secretary of State. Consequently, the petition for a writ of mandamus must be denied.

Conclusion

In conclusion, for the reasons expressed, we direct that the “Tax Limitation,” “Voter Approval of New Taxes,” and “Property Rights” proposals be removed from the ballot. The “Revenue Limits” proposal is approved and the petition for mandamus is denied.
It is so ordered.
GRIMES, C.J., HARDING, J., and MeDONALD, Senior Justice, concur.
OVERTON, J., concurs specially with an opinion, in which GRIMES, C.J., concurs.
SHAW, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
KOGAN, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
WELLS, J., recused.

. Identifying an existing section of the constitution that is affected is also important with regard to the clarify requirement of section 101.161.

. We note that this provision would not allow the exaction of a fee as proposed in the "Save-Our-Everglades” amendment without a favorable two-thirds vote of the electorate. If both this proposal and “Save-Our-Everglades” were on the ballot, and both passed, the provisions of this amendment were intended to render null and void the provisions of the "Save-Our-Everglades” amendment unless that amendment passed by a two-thirds vote.

. We note in passing that the initiative also fails to give adequate notice that it substantially affects numerous provisions of the constitution as required by Fine.

. For future proposals, we note that the use of a question in the title or summary may place a proposal in jeopardy of being removed from the ballot because a question can convey a double meaning.