PER CURIAM.
The Florida Department of State and the Secretary of State appealed a judgment of the circuit court to the First District Court of Appeal, which in turn certified to this Court that the judgment is of great public importance and requires immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const. For the reasons explained below, we affirm the judgment of the circuit court in this case.
FACTUAL AND PROCEDURAL HISTORY
This case involves a joint resolution of the Florida Legislature that proposes an amendment to the Florida Constitution creating a new section relating to health care services in article I of the Florida Constitution. See Fla. H.J. Res. 37 (2010) (joint resolution proposing article I, section 28 of the Florida Constitution relating to *645 health care services) (hereinafter Joint Resolution). The proposed amendment, which has been designated as Amendment 9 by the Division of Elections, was passed by the constitutionally required three-fifths vote of the membership of each house during the 2010 Florida legislative session. The Joint Resolution contained the text of the proposed amendment and a ballot title and summary that the Legislature specified should be placed on the ballot. The full text of the proposed amendment provides:
SECTION 28. Health care services.—
(a) To preserve the freedom of all residents of the state to provide for their own health care:
(1) A law or rule may not compel, directly or indirectly, any person, employer, or health care provider to participate in any health care system.
(2) A person or an employer may pay directly for lawful health care services and may not be required to pay penalties or fines for paying directly for lawful health care services. A health care provider may accept direct payment for lawful health care services and may not be required to pay penalties or fines for accepting direct payment from a person or an employer for lawful health care services.
(b) Subject to reasonable and necessary rules that do not substantially limit a person’s options, the purchase or sale of health insurance in private health care systems may not be prohibited by law or rule.
(c) This section does not:
(1) Affect which health care services a health care provider is required to perform or provide.
(2) Affect which health care services are permitted by law.
(3) Prohibit care provided pursuant to general law relating to workers’ compensation.
(4) Affect laws or rules in effect as of March 1, 2010.
(5) Affect the terms or conditions of any health care system to the extent that those terms and conditions do not have the effect of punishing a person or an employer for paying directly for lawful health care services or a health care provider for accepting direct payment from a person or an employer for lawful health care services, except that this section may not be construed to prohibit any negotiated provision in any insurance contract, network agreement, or other provider agreement contractually limiting copayments, coinsurance, deductibles, or other patient charges.
(6) Affect any general law passed by a two-thirds vote of the membership of each house of the legislature after the effective date of this section, if the law states with specificity the public necessity that justifies an exception from this section.
(d)As used in this section, the term:
(1) “Compel” includes the imposition of penalties or fines.
(2) “Direct payment” or “pay directly” means payment for lawful health care services without a public or private third party, not including an employer, paying for any portion of the service.
(3) “Health care system” means any public or private entity whose function or purpose is the management of, processing of, enrollment of individuals for, or payment, in full or in part, for health care services, health care data, or health care information for its participants.
(4) “Lawful health care services” means any health-related service or treatment, to the extent that the service or treatment is permitted or not prohib *646 ited by law or regulation, which may be provided by persons or businesses otherwise permitted to offer such services.
(5) “Penalties or fines” means any civil or criminal penalty or fine, tax, salary or wage withholding or surcharge, or named fee with a similar effect established by law or rule by an agency established, created, or controlled by the government which is used to punish or discourage the exercise of rights protected under this section. For purposes of this section only, the term “rule by an agency” may not be construed to mean any negotiated provision in any insurance contract, network agreement, or other provider agreement contractually limiting copayments, coinsurance, deductibles, or other patient charges.
Joint Resolution at 1-3.
The Joint Resolution also provided that the following title and summary be placed on the ballot:
HEALTH CARE FREEDOM CONSTITUTIONAL AMENDMENT ARTICLE I, SECTION 28
HEALTH CARE SERVICES. — Proposing an amendment to the State Constitution to ensure access to health care services without waiting lists, protect the doctor-patient relationship, guard against mandates that don’t work, prohibit laws or rules from compelling any person, employer, or health care provider to participate in any health care system; permit a person or an employer to purchase lawful health care services directly from a health care provider; permit a health care provider to accept direct payment from a person or an employer for lawful health care services; exempt persons, employers, and health care providers from penalties and fines for paying directly or accepting direct payment for lawful health care services; and permit the purchase or sale of health insurance in private health care systems. Specifies that the amendment does not affect which health care services a health care provider is required to perform or provide; affect which health care services are permitted by law; prohibit care provided pursuant to general law relating to workers’ compensation; affect laws or rules in effect as of March 1, 2010; affect the terms or conditions of any health care system to the extent that those terms and conditions do not have the effect of punishing a person or an employer for paying directly for lawful health care services or a health care provider for accepting direct payment from a person or an employer for lawful health care services; or affect any general law passed by two-thirds vote of the membership of each house of the Legislature, passed after the effective date of the amendment, provided such law states with specificity the public necessity justifying the exceptions from the provisions of the amendment. The amendment expressly provides that it may not be construed to prohibit negotiated provisions in insurance contracts, network agreements, or other provider agreements contractually limiting copayments, coinsurance, deductibles, or other patient charges.
Joint Resolution at 3-5.
Florida voters Mona Mangat, Diana De-marest, Gracie Fowler, and Louisa McQueeney filed a complaint, asking the Second Judicial Circuit Court to determine whether the ballot summary passed by the Legislature complies with the requirements of section 101.161(1), Florida Statutes (2009), and the various appellate court decisions that have applied and interpreted the requirements of that statutory provision. The parties submitted memoranda of law to the court and the court heard arguments at a hearing in July. In addi *647 tion, the Florida Senate and House of Representatives filed amicus briefs addressing the available remedies should the circuit court find the ballot summary defective. The circuit court issued an order determining that the ballot summary was misleading and should be removed from the ballot of the November 2, 2010, general election.
The circuit court found three statements in the introduction of the ballot summary to be misleading. The court noted that a citizen reading the statement “to ensure access to health care services without waiting lists” “could only conclude that once [the amendment was] passed a constitutional right would exist to obtain a doctor of one’s choice without being put on a waiting list,” while the amendment itself says nothing about waiting lists. The court noted that a second statement in the ballot summary provides that the amendment will “protect the doctor-patient relationship,” but the amendment itself says nothing about this relationship and does not have anything to do with doctor-patient confidentiality. Finally, the summary states that the amendment will “guard against mandates that don’t work,” but neither the summary nor the amendment explains what mandates are at issue, why they do not work, or for whom the mandates do not work. The court concluded that this statement is a subjective term intended to influence a voter’s decision on the amendment. The circuit court concluded that all of these phrases are examples of comments that this Court has held may not be included in ballot summaries. Thus, the circuit court found that the ballot summary contained in the Legislature’s Joint Resolution did not meet the requirements of section 101.106(1), Florida Statutes (2009).
The amici and the Secretary of State asked the circuit court to substitute the text of the proposed amendment for the ballot summary, rather than striking the proposed amendment from the November ballot. The circuit court ruled that it did not have authority to grant this remedy because its limited function was to determine whether the ballot summary, ballot title, and the amendment comply with the requirements of the Florida Constitution and section 101.161(1). The court stated that it was not empowered to correct the acts of the Legislature, even if its failure to do so resulted in the amendment being struck from the ballot.
The Department of State filed a notice of appeal in the First District Court of Appeal and also filed an unopposed suggestion for certification of the case to this Court. The First District certified that the final judgment of the trial court presents issues of great public importance that require immediate resolution by this Court. We have expedited our review of the case in light of the time constraints for printing the ballot for the November general election.
ANALYSIS
In most ballot summary cases, we are asked to determine whether the ballot summary for a proposed constitutional amendment meets the constitutional and statutory requirements for accuracy. In the instant case, however, the Appellant does not ask the Court to look at the lower court’s determination that the ballot summary set forth in the Joint Resolution is misleading. In fact, the Appellant concedes that the ballot summary is misleading. Rather, the Appellant focuses entirely on the applicable remedy after such a determination has been made. The Appellant argues that the Court should substitute the text of the proposed amendment contained in the Joint Resolution for the misleading ballot summary on the November ballot and permit the voters to deter *648 mine whether the proposed amendment will become part of the Florida Constitution.
We agree with the circuit court’s determination that the ballot summary for Amendment 9 does not meet the statutory or constitutional requirements for accuracy. The first two statements that the circuit court found misleading are classic examples of a ballot summary “flying under false colors” as the amendment does not address “waiting lists” or “the doctor-patient relationship” at all. These statements do not give fair notice of the purpose and effect of the amendment. Even if the amendment is approved by the voters, it will not create a constitutional right to access health care services without a waiting list and will not affect the doctor-patient relationship.
While the third statement about “mandates that don’t work” might arguably have a relationship to the amendment which is intended to prevent mandated participation in any health care system, neither the amendment nor the summary identifies what mandates are at issue, explains how the mandates do not work, or specifies for whom they do not work. Thus, this statement is ambiguous. It appears to be a reference to the federal health care mandate, which is the type of political rhetoric that this Court has condemned in other cases. See In re Advisory Op. to the Att’y Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 658 (Fla.2004) (concluding that use of the phrase “provides property tax relief’ in the ballot summary “constitutes political rhetoric that invites an emotional response from the voter by materially misstating the substance of the amendment”); Advisory Op. to the Att’y Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994) (stating that the ballot summary must be accurate and informative and “objective and free from political rhetoric”); In re Advisory Op. to the Att’y Gen.-Save Our Everglades, 636 So.2d 1336, 1341-42 (Fla.1994) (finding “emotional language” of ballot title and summary to be misleading as it resembled “political rhetoric” more than “an accurate and informative synopsis”); Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984) (holding ballot summary defective in part because phrase “thus avoiding unnecessary costs” constituted “editorial comment”). The Court has repeatedly stated that the “ballot summary should tell the voter the legal effect of the amendment, and no more.” Evans, 457 So.2d at 1355. The Court has also condemned “[political rhetoric in a ballot title and summary that invites an emotional response from the voters as opposed to providing only a synopsis of a proposed amendment.” Advisory Op. to Att’y Gen. re Fla. Marriage Prot. Amendment, 926 So.2d 1229, 1238 (Fla.2006).
Because the misleading statements in the ballot summary here do not reflect the true legal effect of the proposed amendment, the ballot summary does not comply with the requirements of section 101.161(1) that the substance of the amendment be printed in “clear and unambiguous language on the ballot.” It also does not comply with the implicit accuracy requirement of article XI, section 5 of the Florida Constitution. Thus, we affirm the circuit court’s conclusion that the ballot summary for Amendment 9 is invalid.
Next, we turn to the Appellant’s argument concerning the appropriate remedy in this case. Prior to 2000, all proposed amendments were subject to a requirement that “[t]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.” § 101.161(1), Fla. Stat. (1999). In 2000, however, the Legis *649 lature revised this requirement. See ch. 2000-361, § 1, at 4035, Laws of Fla.[1] The current law now provides: “Except for amendments and ballot language proposed by joint resolution, the substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.” § 101.161(1) (emphasis added).
Based upon this new statutory language, we agree with the Appellant that the Legislature is not limited to 75 words in a ballot summary. See Sancho v. Smith, 830 So.2d 856, 859 (Fla. 1st DCA 2002) (“The effect of this change in the statute is to exempt the Florida Legislature from the 75-word limit applicable to a ballot summary for an amendment by citizen initiative or by another authorized method of amending the constitution.”). Indeed, the Legislature is not required to provide a ballot summary.[2] Instead, the Legislature may resolve to place the exact text of a proposed amendment on a voter ballot.[3] However, the Joint Resolution in this case specifically provides that the summary language be placed on the ballot. The Joint Resolution says nothing about placing the text of the actual amendment on the ballot.
Nevertheless, the Appellant argues that this Court should “sever” the misleading ballot summary language from the Joint Resolution and place the text of the proposed amendment itself on the ballot. For the reasons stated below, we conclude that there are several problems with the remedy proposed in this case, including that the Appellant actually seeks substitution rather than severance of language and that this Court does not have authority to substitute language for that the Legislature has clearly intended to appear on the ballot.
Severability is a judicially created doctrine which recognizes a court’s obligation to uphold the constitutionality of legislative enactments where it is possible to remove the unconstitutional portions. Ray v. Mortham, 742 So.2d 1276, 1280 (Fla.1999). It is “derived from the respect of the judiciary for the separation of powers, and is ‘designed to show great deference to the legislative prerogative to enact laws.’ ” Id. (quoting Schmitt v. State, 590 So.2d 404, 415 (Fla.1991)).
Indeed, Florida courts have stricken invalid portions of legislative enactments and have permitted the remainder to be preserved as valid law. See, e.g., Florida *650 Hosp. Waterman, Inc. v. Buster, 984 So.2d 478, 493-94 (Fla.2008) (severing several subsections from a statute that unconstitutionally impinged upon the “Patients’ right to know about adverse medical incidents” provision in the Florida Constitution). We have also applied the doctrine to a citizen-initiated constitutional amendment in one instance. See Ray, 742 So.2d at 1280-84. (severing provisions relating to federal legislators from voter-approved constitutional amendment that imposed term limits on elected state officials). However, this Court has historically applied the sever-ability doctrine to a statute or amendment after it has been enacted by the Legislature or approved by the voters. See, e.g., Ray, 742 So.2d at 1281 (“The issue of severability arises only after an amendment already approved by voters has been challenged.”). In this case, this Court is not reviewing a legislative enactment or an approved constitutional amendment, but rather a joint resolution containing a proposed amendment that has not yet been submitted to the voters for approval.
While the Appellant speaks in terms of “severance,” the remedy being proposed is in fact a substitution of other language for the ballot summary. The Joint Resolution specifically provides that the ballot summary appear on the ballot. The Legislature “resolved” that the proposed Health Care Services amendment would be represented on the ballot by the ballot title and summary. The Legislature did not resolve to place the entire text of the proposed amendment on the ballot. Thus, if the summary is struck from the ballot, it leaves nothing but the ballot title for the voters to consider. Therefore, the solution the Appellant seeks is substitution, not severance, of the ballot summary. The severability doctrine has only been used to strike objectionable language. It is not a vehicle for the wholesale substitution of other language for language that is stricken.
Further, in the context of a ballot summary review, we have not severed defective language from a ballot summary that contains misleading or ambiguous language. Instead, we have stricken the misleading summary from the ballot, thereby removing the proposed amendment from a vote of the electorate. See, e.g., Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982) (striking from the ballot a proposed constitutional amendment regarding the ban on lobbying by former legislators based on the misleading ballot summary in the joint resolution); Advisory Op. to Atty. Gen. re 1.35 Property Tax Cap, Unless Voter Approved, 2 So.3d 968, 977 (Fla.2009) (striking from the ballot a misleading ballot summary in a citizens initiative petition relating to property tax cap).
The Appellant suggests that the Courts paramount focus should be the Legislatures intent in passing the joint resolution, i.e., that the proposed Health Care Services amendment be put to the vote of Florida citizens. While we acknowledge this intent, we are also cognizant that the Legislature clearly expressed its intent that a summary of the amendment, rather than the text of the amendment or both the summary and the text, appear on the ballot to be presented to Florida voters. This Court does not have the authority to substitute the language that three-fifths of the members of the Legislature have voted to place on the ballot.
The Appellant relies heavily on the fact that this Court ordered substitution of the text of a proposed amendment in a previous case. See ACLU v. Hood, No. SC04-1671, 888 So.2d 621 (Fla. Sept. 2, 2004) (unpublished order directing the Secretary of State to remove the ballot summary and replace it with the actual text of the proposed amendment). We note that the *651 Court’s direction in ACLU was issued through an unpublished order that contained no explanation, analysis, or authority for the Court’s action. Id. However, to the extent that our order in ACLU is viewed as authority for the remedy the Appellant requests in this case, we specifically recede from ACLU as it is not consistent with a long line of cases involving proposed constitutional amendments. We have faithfully reviewed proposed amendments for compliance with the “strict minimum for ballot clarity” and not ventured into fixing problems with the ballot language. Armstrong v. Harris, 773 So.2d 7, 21 (Fla.2000); see also Askew, 421 So.2d at 155. Our role in this process is as a reviewer of constitutional validity, not as an editor or author. For example, in Smith v. American Airlines, Inc., 606 So.2d 618 (Fla.1992), where we found the ballot summary for an amendment proposed by the Taxation and Budget Reform Commission to be fatally defective, we specifically stated that the Court has no “authority to independently rewrite the ballot summary to conform to the [requirements of section 101.161(1) ].” Id. at 621. Rather than fixing the problem with the ballot summary, we struck the amendment proposed by the Commission from the general election ballot. Id. at 622. Pursuant to our role and precedent, the only remedy in the instant case is to strike the proposal from the ballot.
Moreover, although the Appellant argues that the striking of the entire amendment in this case thwarts legislative intent by preventing Florida voters from voting on the merits of the proposal, we have previously asked the Legislature to establish a procedure that would avoid this problem. See American Airlines, 606 So.2d at 622 (“In order to prevent this problem from recurring in the future, we urge the legislature to consider amending the statute to empower this Court to fix fatal problems with ballot summaries, at least with respect to those amendments proposed by revision commissions or the legislature.”); see also Askew, 421 So.2d at 157 (Overton, J., concurring) (suggesting a process whereby misleading ballot language can be challenged and corrected in sufficient time to allow the people to vote on the proposal); Armstrong, 773 So.2d at 25-26 (Pariente, J., specially concurring) (agreeing with Justice Overton’s concerns in Askew). The Legislature has yet to establish such a process.
Finally, if we were to place the entire text of the amendment on the ballot we would be ignoring the Legislature’s explicit language that the ballot summary and title be placed on the ballot. Indeed, if the Legislature had intended for the text of Amendment 9 to be placed on the ballot along with the summary, it could have done so. See Sancho v. Smith, 830 So.2d 856, 861-62 (Fla. 1st DCA 2002) (concluding that the ballot summary accurately described the proposed amendment and noting that the summary included a copy of the full text of the amendment).
In this case, the ballot language put forth by the party proposing the constitutional amendment contains misleading and ambiguous language. Currently, our only recourse is to strike the proposed constitutional amendment from the ballot, thereby removing it from a vote of the electorate. See, e.g., Askew, 421 So.2d at 156.
CONCLUSION
For the reasons explained above, we affirm the circuit court’s order finding the ballot summary for Amendment 9 does not meet the requirements of section 101.161(1) and therefore may not be included on the November 2010 ballot.
It is so ordered.
*652 QUINCE, LABARGA and PERRY, JJ., concur.
PARIENTE, J., concurs in result with an opinion.
LEWIS, J., concurs in result.
CANADY, C.J., dissenting with an opinion, in which POLSTON, J., concurs.

. The First District Court upheld this statutory change against an equal protection challenge in 2007. See Florida Hometown Democracy, Inc. v. Cobb, 953 So.2d 666 (Fla. 1st DCA 2007). The district court explained that the process whereby a legislative proposal reaches the ballot is different from the process utilized for a citizen's initiative petition and requires that the "Legislature have the freedom to adequately explain the proposed change in a more lengthy ballot summary.” Id. at 676.

. However, if the Legislature chooses to include a ballot summary, it must be an "explanatory statement ... of the chief purpose of the measure.” § 101.161(1), Fla. Stat. (2009).

.Although the Legislature may place the full text of an amendment on a ballot without a ballot summary, the amendment text must still meet the accuracy requirements of article XI, section 5 of the Florida Constitution, as codified in section 101.161(1), Florida Statutes. Under these circumstances, the text of the amendment must serve the purpose of the ballot summary, i.e., advise the electorate of "the true meaning, and ramifications, of an amendment.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). We do not reach the Appellant's argument that the text of Amendment 9 would satisfy these requirements, based on our conclusion that the remedy of substitution is not available in this case.