CANADY, C.J.,
dissenting.
I dissent from the majority’s decision to prevent the people of Florida from voting on amendment 9, the Legislature’s duly proposed constitutional amendment related to healthcare services.
In 2004, this Court considered a challenge to a constitutional amendment proposed by the Legislature similar to the challenge presented here. Amer. Civil Liberties Union of Fla., Inc. v. Hood, No. SC04-1671, 888 So.2d 621, 2004 Fla. Lexis 1514 (Fla. Sept. 2, 2004) (ACLU). We resolved that case by issuing an unpublished order requiring the Secretary of State to place on the general election ballot “the actual text of the amendment itself and not the proposed ballot summary.” Id. We should do likewise in the case now before us.
The decision in ACLU was not inconsistent with our decision in Smith v. American Airlines, Inc., 606 So.2d 618 (Fla.1992). In American Airlines, we made the following observation: “Neither party argues that this Court has the authority to independently rewrite the ballot summary to conform to the statute, and our independent research has revealed no authority to do so.” Id. at 621. This statement by no means resolves the question at issue here. First, the Court’s comments regarding an issue not raised by the parties should not be viewed as a holding. Second, the comments related to rewriting the ballot summary-not substituting the text of the amendment for the summary.
In 1992, when this Court decided American Airlines, the Legislature was still subject to the requirement that “[t]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.” § 101.161(1), Fla. Stat. (1999). Since the text of the proposed amendment exceeded seventy-five words, placing the full text of the amendment on the ballot was not an option. Thus, the American Airlines Court only had the option of actually rewriting a ballot summary “not exceeding 75 words in length, of the chief purpose of the measure.” That is an entirely different matter than substituting the full text of the proposed amendment contained in the joint resolution for a defective ballot summary. It is clear that in ACLU this Court understood the difference.
Although I recognize that unpublished orders do not constitute binding precedent, it is undeniable that we have looked to such unpublished orders for guidance in the past and that we have not been reluctant to rely on such orders in justifying, our decisions. See, e.g., Sims v. State, 998 So.2d 494, 498 (Fla.2008) (relying on unpublished orders treating “belated notices to invoke as timely filed when a late filing was due to some fault of the attorney and beyond the incarcerated defendant’s control” to justify treating petitioner’s notice to invoke as timely filed); Fla. Bar v. Pape, 918 So.2d 240, 250 (Fla.2005) (citing *654 unpublished order to establish that in matters of discipline, “[w]e have also required that attorneys attend the Florida Bar Advertising Workshop”); Calamia, v. Singletary, 686 So.2d 1337, 1340 (Fla.1996) (citing unpublished orders of federal district courts to support decision that “administrative gaintime and provisional credit statutes are ... not subject to ex post facto proscriptions”), vacated on other grounds, 520 U.S. 1141, 117 S.Ct. 1309, 137 L.Ed.2d 473 (1997).
The Legislature has the authority to propose amendments to the Florida Constitution “by joint resolution agreed to by three-fifths of the membership of each house of the legislature.” Art. XI, § 1, Fla. Const. The elected representatives of the people are thereby empowered to present to the people proposals for amending the people’s constitution. The courts should act with restraint when we are asked to interpose judicial power to bar the people from voting on a proposal submitted to them by their elected representatives. Here, we could and should demonstrate appropriate restraint by placing on the ballot the “actual text of the amendment itself and not the proposed ballot summary.” ACLU, 888 So.2d 621, 2004 Fla. Lexis 1514.
I reject the notion that faithfulness to the intention of the Legislature forecloses us from acting as we did in ACLU. Whenever the Legislature proposes a constitutional amendment, it is overwhelmingly clear that the Legislature’s objective is to give the people an opportunity to vote on the proposed amendment. Placing the full text of the proposed amendment on the ballot would undeniably be consistent with that objective. Failing to place the full text on the ballot undeniably defeats that objective.
I also reject the notion that the text of amendment 9 does not adequately inform the voters of the substance of the proposed amendment. Ordinarily, the text of a proposed amendment will necessarily contain the most direct and accurate expression of the substance and effect of the amendment. The text itself may, however, be inadequate to sufficiently inform the voters if the text does not disclose that it will effect the repeal of an existing constitutional provision. But amendment 9 would not repeal any provision of the Florida Constitution. The text of the amendment hides nothing from the voters.
I would therefore reverse the trial court’s order and remand for entry of an order directing that the Secretary of State place on the ballot the full text of the amendment rather than the defective ballot summary.
POLSTON, J., concurs.