PER CURIAM.
The Attorney General of Florida has petitioned this Court to review a proposed amendment to the Florida Constitution, as it is his duty to do. Art. IV, § 10, Fla. Const. We have original and exclusive jurisdiction. Art V, § 3(b)(10), Fla. Const.
In a letter of May 18, 1994, to this Court, the Attorney General has advised us that the proposed amendment has met the prerequisites for review here, as required by the Constitution, id., and by the implementing legislation. See §§ 15.21, 16.061, Florida Statutes (1993). Pursuant to the Attorney General’s letter, we issued an interlocutory order dated May 19, 1994, ordering interested parties to respond if they so chose[1]; and we disseminated information about this proceeding to the press. This case had to be expedited because of the nearness to the fall elections.
The amendment in question proposes to add the following language to article I, section 16, Florida Constitution:
Except for pardon, clemency and incentive gain time, no state prisoner shall be released prior to serving the full term of the lawful sentence of incarceration. Granting of incentive gain time shall not be automatic but awarded only for good conduct. In no event shall incentive gain time exceed fifteen days for every one hundred days of sentence.
The ballot title is “Stop Early Release of Prisoners.” The ballot summary is:
A state constitutional amendment to ensure that state prisoners serve at least eighty-five percent of their sentence [sic],
We begin by noting that our May 19 order authorized all interested parties to file initial briefs in this cause by May 29, 1994, with reply briefs due by June 9, 1994. A copy of this order was mailed to the Chair of the SOS Foundation, Inc., the organization that drafted and sponsored this petition; and the Office of the Clerk of the Court communicated with the Chair by telephone.[2] Despite this notice, no interested party — including SOS Foundation — has filed a brief of any kind, requested oral argument, or appeared before this Court on the date set.[3] As a result, all parties who may have had an interest in this proceeding have waived any rights they may have had to advise this Court of their viewpoints and legal analyses of the issues.
Accordingly, the Court will sua sponte examine the issues pursuant to our own independent research, since we are required by the Constitution to issue an opinion whether or not any interested parties have appeared before us. Art. V, § 3(b)(10), Fla. Const. We emphasize that we have no choice in conducting an independent review in light of the lack of argument by any interested parties. The Constitution states that we
[s]hall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law.
Id. (emphasis added). This is language of mandate, and we therefore proceed to the substantive issues.
We are constrained by present Florida law to address two issues and no others: (1) whether the proposed amendment contains only a single subject, as required by article XI, section 3 of the Florida Constitution[4]; and (2) whether the proposed ballot summary is fair and advises voters of the chief objectives of the proposed amendment so that voters may intelligently east their *726 ballots.[5] Advisory Opinion to the Attorney General — Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227-29 (Fla.1991). We assume arguendo that the amendment meets the single-subject requirement, because we find the ballot-summary issue dispositive of the case.
In this case, the ballot summary states that the proposed amendment will “ensure ” that state prisoners will serve “at least eighty-five percent of their sentence” [sic] (emphasis added). However, the text of the proposed amendment itself clearly states that this will not be true in eases of pardon and clemency. We note that the pardon and clemency power granted to the Governor and Cabinet are quite sweeping in nature. The Constitution does not purport to limit their authority in any manner, except in the case of treason where the legislature also has some authority. Art. TV, § 8, Fla. Const.
Moreover, pardon and clemency decisions are largely unreviewable by the courts of Florida, meaning that in the vast majority of cases the Governor and Cabinet can take any action they deem fit to commute or pardon, subject to veto by no one. Parole Comm’n v. Lockett, 620 So.2d 153, 154-55 (Fla.1993).
On another point, article IV, section 8(c) of the Florida Constitution currently allows the legislature by law to create a parole and probation commission with power “to grant paroles or conditional releases to persons under sentences for crime.” It is apparent from the plain language of the proposed amendment that it will substantially modify this provision of the Constitution: While not expressly repealing article IV, section 8(e), the proposed amendment essentially will eliminate the commission’s primary powers and abolish parole and conditional release in the vast majority of cases. However, nothing in the ballot summary mentions this collateral consequence of the amendment. We also note that the proposed amendment does not address the somewhat puzzling question of how to determine what constitutes eighty-five percent of a life sentence.
It is well known that Florida has had a severe problem of prison overcrowding that has resulted in the state coming under the injunction of the federal courts. See, e.g., Costello v. Wainwright, 525 F.2d 1239 (5th Cir.1976). The state reasonably can anticipate that similar federal suits would be inevitable were Florida to permit overcrowding of prisons again. The present proposed initiative could result in prison overcrowding because it restricts the legislative authority to allow for gain time or provide for parole, and because gain time presently is the state’s primary method of eliminating prison overcrowding.
Thus, there are four possible results as to what will occur if this amendment is approved, in light of Florida’s present fiscal and legal constraints: (1) prisons will become overcrowded again, resulting in renewed federal lawsuits; (2) the legislature will be forced to appropriate large sums to construct new prisons, despite the state’s limited tax base and widespread public opposition to new taxes; (3) the Governor and Cabinet will use their clemency powers to create a purely executive form of early release, but one cast entirely as a form of clemency; or (4) some combination of the foregoing.
The first of these alternatives obviously is not a viable option for the state because it can only forestall the day when one of the other options must be adopted. The second surely will face some opposition and, even if new taxes are enacted, the legislature may be unable to raise all the revenues that would be required to meet the “eighty-five percent” minimum for prison sentences the amendment purports to establish. As a result, the third and fourth options are a highly likely collateral result of the proposed amendment: The overall scheme that will result after adoption of the amendment will put strong pressure on the Governor and Cabinet to greatly expand the availability of clemency— essentially creating an entirely new form of “gain time” cast in the mold of executive clemency. This would be the easiest and *727 least expensive option left open to the state by the proposed amendment.
Accordingly, we can only find the ballot summary at issue here inaccurate and seriously misleading. To say that the amendment will “ensure” that inmates serve at least eighty-five percent of their sentences at best completely ignores the amendment’s own exceptions; and at worst it misleads voters into believing that the amendment is ironclad, when in fact it expressly leaves the Governor and Cabinet an easy, cheap, and relatively painless method of defeating the entire purpose stated in the summary.
We need not and do not attempt to divine whether or to what extent this will occur: The fact that the proposed amendment leaves open this executive option plainly shows the ballot summary to be inaccurate. The proposed amendment will not deliver to the voters of Florida what it says it will: It includes legal loopholes so large that the Governor and Cabinet can, if they so choose, render the entire amendment illusory. The ballot summary says the opposite. We also find the summary seriously misleading in its failure to make any mention of the fact the proposed amendment essentially will abolish parole and conditional release in Florida.
Accordingly, we find that the proposed amendment violates the ballot summary requirements imposed by Florida law. For that reason, it may not appear on the ballot in the fall elections.
It is so ordered.
KOGAN, HARDING and WELLS, JJ., and McDONALD, Senior Justice, concur.
OVERTON, J., concurs specially with an opinion, in which WELLS, J., concurs.
GRIMES, C.J., dissents with an opinion, in which SHAW, J., concurs.

. No provision of Florida law actually requires that anyone respond to such an order.

. The Chair indicated that his organization did not intend to file a brief and later did not attend the oral argument in this case.

. The Attorney General, of course, sent an attorney as required by the Constitution and statutes. However, the Attorney General merely gives this Court an overview of the issues in a neutral manner and does not necessarily advocate any particular viewpoint.

.Article XI, section 3 of the Florida Constitution provides that "any revision or amendment shall embrace but one subject and matter directly connected therewith.”

. The second requirement arises from section 101.161, Florida Statutes (1993), and the deci-sional law interpreting it.