PER CURIAM.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution to determine whether the initiative petition for the proposed constitutional amendment entitled “Tax Limitation: Should Two-Thirds Vote Be Required For New Constitutionally Imposed State Taxes/Fees?” complies with the requirements of article XI, section 3, of the Florida Constitution, and section 101.161, Florida Statutes (1993).[1] ' We find that it does.
This is the second time we have reviewed the Tax Limitation petition. Upon initial review of the petition, we found that the “initiative improperly attempts to combine provisions concerning both taxes and user fees in a single initiative and, as a result, it violates the single-subject requirement.” Advisory Opinion to the Attorney General re: Tax Limitation, 644 So.2d 486, 491 (Fla. 1994) (Tax Limitation I). We concluded that “[b]cause of this finding, we need not address the other issues raised by the opponents.” Id. Consequently, we did not determine if the Tax Limitation petition complied with section 101.161, Florida Statutes (1993).
Subsequent to our decision in Tax Limitation I, Florida voters approved an amendment to article XI, section 3 of the Florida Constitution excepting from the single-subject requirement those amendments limiting the power of the government to raise revenue.[2] Because the Tax Limitation petition falls within the exception to the single-subject requirement for initiative petitions, and the petition signatures are still valid,[3] the Attorney General has resubmitted the Tax Limitation petition for review by this Court. In so doing, he raises four issues which he believes require judicial determination:[4] (1) whether section 100.371(2) authorizes the resubmission of a petition that has been previously stricken by this Court and whether the Court’s previous consideration and rejection of this initiative petition bars reconsideration now; (2) whether the ballot title is defective because it is framed as a question; (3) whether the term “constitutionally-imposed” used in the ballot title misleads voters as to the scope of the amendment; and (4) whether the proposed amendment specifies an effective date under article XI, section 5(c) of the Florida Constitution.

NO BAR TO RECONSIDERATION

In Florida League of Cities v. Smith, 607 So.2d 397 (Fla.1992), this Court rendered an advisory opinion pursuant to article IV, section 10 of the Florida Constitution, approving a proposed constitutional amendment for compliance with the single-subject rule and the title and ballot summary requirements. Opponents of the measure subsequently filed a petition for a writ of mandamus, raising a new issue not addressed in the advisory opinion. This Court held that:
Renewed litigation will be entertained only in truly extraordinary cases, such as in the *866 •present case where a vital issue was not addressed in the earlier opinion.
Id. at 399 (emphasis added).
Here, we have previously rejected the Tax Limitation initiative on the ground that, because it combined taxes and fees, the initiative failed to meet the single-subject requirement of article XI, section 3 of the Florida Constitution. Tax Limitation I, 644 So.2d at 491. We did not reach the issue of whether the petition complied with section 101.161. Id. In 1994, subsequent to our decision in Tax Limitation I, Florida voters adopted the “Revenue Limits” amendment to article XI, section 3. The Revenue Limits amendment eliminated the single-subject requirement for amendments, like this one, which “limit the power of government to raise revenue.” Therefore, the Revenue Limits amendment mooted our sole stated basis for striking the Tax Limitation petition from the 1994 ballot. Under League of Cities, we may now review the Tax Limitation petition for a second time because our earlier decision in Tax Limitation I did not address the “vital issue” of whether the Tax Limitation petition complied with the requirements of section 101.161.[5] Moreover, there is nothing in section 100.371(2)[6] that prevents this Court from reviewing an initiative petition for a second time under these circumstances.

THE LANGUAGE OF THE TAX LIMITATION PETITION

The ballot title of the Tax Limitation petition reads:
Tax Limitation: Should Two-Thirds Vote be Required For New Constitutionally-Imposed State Taxes/Fees?
The ballot summary of the Tax Limitation petition reads:
SUMMARY: Prohibits imposition of new State taxes or fees on or after November 8,1994 by constitutional amendment unless approved by two-thirds of the voters voting in the election. Defines “new State taxes or fees” as revenue subject to appropriation by State Legislature, which tax or fee is not in effect on November 7, 1994. Applies to proposed State tax and fee amendments on November 8, 1994 and those on later ballots.
The Tax Limitation petition seeks to amend article XI of the Florida Constitution by adding a new section 7:
Notwithstanding Article X, Section 12(d) of this constitution, no new State tax or fee shall be imposed on or after November 8, 1994 by any amendment to this constitution unless the proposed amendment is approved by not fewer than two-thirds of the voters voting in the election in which such proposed amendment is considered. For purposes of this section, the phrase “new State tax or fee” shall mean any tax or fee which would produce revenue subject to lump sum or other appropriation by the Legislature, either for the State general revenue fund or any trust fund, which tax or fee is not in effect on November 7, 1994 including without limitation such taxes and fees as are the subject of proposed constitutional amendments appearing on the ballot on November 8, 1994. This section shall apply to proposed constitutional amendments relating to State taxes or fees which appear on the November 8, 1994 ballot, or later ballots, and any such proposed amendment which fails to gain the two-thirds vote required hereby shall be null, void and without effect.[7]

*867
THE TAX LIMITATION PETITION SATISFIES THE REQUIREMENTS OF SECTION 101.161(1)

We now must determine whether the Tax Limitation petition meets the requirements of section 101.161(1), Florida Statutes (1998), which states in pertinent part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people ... [t]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
When reviewing a proposed constitutional amendment for the ballot, we have noted that each proposed amendment is to be reviewed with “extreme care, caution and restraint.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Our “duty is to uphold the proposal unless it can be shown to be ‘clearly and conclusively defective.’ ” Floridians Against Casino Takeover v. Let’s Help Florida, 368 So.2d 337, 339 (Fla.1978) (quoting Weber v. Smathers, 338 So.2d 819, 821 (Fla.1976)).
With respect to reviewing ballot titles of proposed amendments, we have warned that “the use of a question in the title or summary may place a proposal in jeopardy of being removed from the ballot because a question can convey a double meaning.” Tax Limitation I, 644 So.2d at 496 n. 4. However, we have also said that “the use of a question in the ballot title is not per se misleading.” Id. at 496. In fact, this Court in Tax Limitation I went on to approve a ballot title phrased as a question: “Revenue Limits: May People’s Amendments Limiting Government Revenue Be Allowed To Cover Multiple Subjects?” Id.
In this case, the Attorney General raises concern about the form of the ballot title in this case:
The proposed initiative petition is entitled “Tax Limitation: Should Two-Thirds Vote Be Required For New Constitutionally-Imposed State Taxes/Fees?” Thus, the ballot title is phrased as a question to the voters. Rather than informing the voter of the legal effect of the amendment, the ballot title poses a question that, by its very nature, signifies that the issue is unresolved. This Court advised in Advisory Opinion to the Attorney General—Taw Limitation, swpra at 496 n. 4, that the “use of a question in the title or summary may place a proposal in jeopardy of being removed from the ballot because a question can convey a double meaning.”
Contrary to the Attorney General’s suggestion, the Tax Limitation ballot title is not fatally defective for framing the issue as a question, nor does it imply that the issue is unresolved. Rather, the ballot title question raises the issue for resolution. If the voter answers the question posed in the ballot title in the affirmative, the voter votes “yes” for the amendment. On the other hand, if the voter answers the ballot title question in the negative, the voter votes “no,” rejecting the amendment. Therefore, like the Revenue Limits ballot title which this Court retained for the 1994 ballot in Tax Limitation I, this ballot title is not misleading because it is framed as a question.
Furthermore, the Attorney General contends this ballot title may be misleading because it refers to “constitutionally imposed” taxes or fees:
The title refers to “constitutionally imposed” state taxes or fees. The voter may be unsure as to whether the amendment affects only new taxes or fees that are imposed by the Florida Constitution or whether it also extends to taxes or fees imposed by the Legislature since a legislatively created tax is, in fact, imposed pursuant to the authority granted to the Legislature by the Constitution.
The Attorney General argues, in effect, that all taxes, including those imposed by the Florida Legislature, must be “constitutional,” as opposed to “unconstitutional,” in order to be implemented, and, consequently, the ballot title suggests a broader scope than the text of the amendment allows. If, as the Attorney General suggests, the phrase is interpreted to mean “constitutional” as opposed to “unconstitutional,” then the result would be to require a two-thirds vote for taxes and fees that are constitutionally valid but only a simple majority vote for those *868 taxes and fees which are unconstitutional. Such a construction of the phrase “constitutionally imposed” is illogical. Consequently, we do not believe that the Tax Limitation ballot title will confuse voters as to the distinction between taxes imposed by constitutional amendment and taxes imposed by the Legislature. Therefore, we find that this ballot title is not misleading under section 101.161.
Furthermore, we reject the Attorney General’s concern as to the misconstruction of the ballot title because the title cannot be read in isolation. Section 101.161 requires the ballot summary and title to be read together. Advisory Opinion to the Attorney General re: Limited Casinos, 644 So.2d 71, 75 (Fla.1994) (“This Court has always interpreted section 101.161(1) to mean that the ballot title and summary must be read together in determining if the ballot information properly informs the voter.”). The ballot summary clearly explains that the taxes and fees targeted by the Tax Limitation petition are those imposed “by constitutional amendment.” Thus, when the ballot title is read with common sense and in context with the summary, it is clear that the Tax Limitation ballot title accurately informs the voters of the chief purpose of the proposed constitutional amendment and satisfies the requirements of section 101.161.
With respect to whether the ballot title and summary accurately inform the voter of the chief purpose and effect of the proposed amendment, this Court has said that the ballot summary is not required to include all possible effects, Grose v. Firestone, 422 So.2d 303, 305 (Fla.1982), nor to “explain in detail what the proponents hope to accomplish.” Advisory Opinion to the Attorney General English — The Official Language of Florida, 520 So.2d 11, 13 (Fla. 1988). Rather, it is sufficient that the ballot summary clearly and accurately sets forth the general rule to be applied and informs the voters of the chief purpose of the proposal so that an informed decision is possible. In this case, the ballot title and summary clearly inform voters that the chief purpose of the amendment is to require a two-thirds majority vote of the electorate for any tax or fee which is imposed by a constitutional amendment on or after November 8, 1994. The terms of the ballot title and summary clearly convey that if the tax or fee in question is not imposed by constitutional amendment (as would be the case if the tax or fee were legislatively imposed), then a two-thirds vote of the electorate is not required.
In addition, the ballot summary fairly and adequately informs the voters that a super-majority would replace a simple majority requirement for constitutionally imposed taxes and fees after November 8, 1994. In his letter, the Attorney General contends that:
While the text of the amendment indicates that it is modifying Article X, section 12(d), Florida Constitution, by changing the definition of “vote of the electors” to require a two-thirds vote approving a constitutionally imposed state tax or fee, the summary does not inform the voter of such effect.
The voter must be presumed to have a certain amount of common sense and knowledge, and to know from learning and experience the general rule that a simple majority prevails. Moreover, the addition of the information that the amendment modifies article X, section 12(d) of the Florida Constitution, which is otherwise readily available in the beginning of the proposed amendment’s text, does not give the voter any additional information other than where the Constitution is being amended. While this information might sometimes be critical to a voter’s understanding of the amendment, in this case it adds little. The voter is already told that the chief purpose of the amendment is to require a two-thirds vote to amend the Constitution in the limited cases in which new State taxes or fees are imposed by constitutional amendment. The amendment does nothing else, and knowing where it is to be placed in the Constitution is of little value to voters. Moreover, the additional words necessary to convey this information could not have been added given the seventy-five word limit for ballot summaries under section 101.161(1).[8]
Finally, the Attorney General asserts that
[t]he proposed amendment purports to apply to constitutional amendments seeking to impose state taxes or fees after Novem *869 ber 8, 1994. The proposed amendment, however, does not specify an effective date for the amendment itself. Therefore, pursuant to Article XI, section 5(e), Florida Constitution,
If the proposed amendment or revision is approved by vote of the electors, it shall be effective as an amendment to or revision of the constitution of the state on the first Tuesday after the first Monday in January following the election, or on such other date as may be specified in the amendment or revision.
The Florida Constitution provides that an amendment’s effective date may be specified in the amendment rather than being subject to the default effective date. Art. XI, section 5(c), Fla. Const. The ballot summary, as well as the text of the proposed amendment, states that it will apply to all amendments imposing taxes or fees passed on or after November 8, 1994. Therefore, it clearly states an effective date, and so advises the voter.
In conclusion, we find that the Tax Limitation ballot title and summary are valid under article XI, section 3 of the Florida Constitution and comply with the requirements of section 101.161 by accurately informing the voter of the chief purpose and effects of the proposed amendment.
It is so ordered.
SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON, J., concurs with an opinion, in which ANSTEAD, J., concurs.
GRIMES, C.J., recused.

. We have jurisdiction. Art. IV, § 10; art. V, § 3(b)(10), Fla. Const.

. Article XI, section 3 of the Florida Constitution now requires that any revision or amendment proposed by initiative, "except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.”

. See § 100.371(2), Fla.Stat. (1993) (stating that signatures obtained on initiative petitions are valid for a period of four years).

. See § 16.061, Fla.Stat. (1993) ("The petition may enumerate any specific factual issues which the Attorney General believes would require a judicial determination.”)

. Contrary to the Attorney General's suggestion, a determination by this Court of whether the Tax Limitation petition complies with section 101.161 would not constitute a “reconsideration” since we declined to decide this issue originally in Tax Limitation I.

. Section 100.371(2) reads:
Such certification shall be issued when the Secretary of State has received verification certificates from the supervisors of elections indicating that the requisite number and distribution of valid signatures of electors have been submitted to and verified by the supervisors. Every signature shall be dated when made and shall be valid for a period of 4 years following such date, provided all other requirements of law tire complied with.

. In other words, if one third of the voters plus one vote against a proposed constitutional amendment that imposes a new tax or fee appearing on a ballot on or after November 8, 1994, then the amendment will not pass.

. The current ballot summaiy, containing 73 words, meets the length limitation of section *869 101.161(1). Moreover, the ballot title for the proposed amendment is "Tax Limitation: Should Two-Thirds Vote Be Required for New Constitutionally-Imposed State Taxes/Fees?" This flfteen-word title also complies with the length limitation of section 101.161(1), and the measure is commonly referenced by its title as required.