953 So.2d 666 (2007)
FLORIDA HOMETOWN DEMOCRACY, INC. and Lesley Gay Blackner, Appellants,
v.
Sue M. COBB, in her official capacity as Florida Secretary of State, Appellee.
No. 1D06-5059.
District Court of Appeal of Florida, First District.
March 30, 2007.
*668 Ross Stafford Burnaman, Tallahassee, for Appellants.
Bill McCollum, Attorney General, Jonathan A. Glogau, Chief, Complex Litigation, and Mark Dunn, Assistant Attorney General, Tallahassee, for Appellee.
WOLF, J.
On October 26, 2004, appellants, Florida Hometown Democracy, Inc. and Lesley Gay Blackner, filed an action for declaratory and injunctive relief against appellee, Glenda L. Hood, in her official capacity as Florida's Secretary of State.[1] This suit challenged the constitutionality of a legislatively proposed revision to the Florida Constitution known as Senate Joint Resolution (SJR) 2394. SJR 2394 proposed placing time limitations on amendments to the constitution proposed by citizen's initiatives. The trial court granted a final summary judgment in favor of appellees.
Appellants raise three issues on appeal: (1) whether the trial court erred in granting appellee's motion for summary judgment based on its finding that SJR 2394's ballot language met the minimum requirements set out in section 101.161(1), Florida Statutes (2004); (2) whether the trial court erred in granting appellee's motion for summary judgment based on its finding that appellee properly noticed the proposed revision pursuant to article XI, section 5 of the Florida Constitution; and (3) whether the trial court erred in granting appellee's motion for summary judgment based on its finding that section 101.161(1), Florida Statutes (2004), is constitutional. We affirm.
SJR 2394 was signed by legislative officers and filed with the Secretary of State for placement on the 2004 general election ballot. SJR 2394 provided for the following ballot title and summary:

CONSTITUTIONAL AMENDMENTS

ARTICLE IV, SECTION 10

ARTICLE XI, SECTION 5
CONSTITUTIONAL AMENDMENTS PROPOSED BY INITIATIVE.Proposing amendments to the State Constitution to require the sponsor of a constitutional amendment proposed by citizen's initiative to file the initiative petition with the Secretary of State by February 1 of the year of a general election in order to have the measure submitted to the electors for approval or rejection at the following November's general election, and to require *669 the Florida Supreme Court to render an advisory opinion addressing the validity of an initiative petition by April 1 of the year in which the amendment is to be submitted to the electors.
The text of the proposed constitutional revision was:

ARTICLE IV

EXECUTIVE
SECTION 10. Attorney General. The attorney general shall, as directed by general law, request the opinion of the justices of the supreme court as to the validity of any initiative petition circulated pursuant to Section 3 of Article XI. The justices shall, subject to their rules of procedure, permit interested persons to be heard on the questions presented and shall render their written opinion no later than April 1 of the year in which the initiative is to be submitted to the voters pursuant to Section 5 of Article XI expeditiously.

ARTICLE XI

AMENDMENTS
SECTION 5. Amendment or revision election.
(a) A proposed amendment to or revision of this constitution, or any part of it, shall be submitted to the electors at the next general election held more than ninety days after the joint resolution, initiative petition or report of revision commission, constitutional convention or taxation and budget reform commission proposing it is filed with the custodian of state records, unless, pursuant to law enacted by the affirmative vote of three-fourths of the membership of each house of the legislature and limited to a single amendment or revision, it is submitted at an earlier special election held more than ninety days after such filing.
(b) A proposed amendment or revision of this constitution, or any part of it, by initiative shall be submitted to the electors at the general election provided the initiative petition is filed with the custodian of state records no later than February 1 of the year in which the general election is held.
(c) (b) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3.
(d) (c) Once in the tenth week, and once in the sixth week immediately preceding the week in which the election is held, the proposed amendment or revision, with notice of the date of election at which it will be submitted to the electors, shall be published in one newspaper of general circulation in each county in which a newspaper is published.
(e) (d) If the proposed amendment or revision is approved by vote of the electors, it shall be effective as an amendment to or revision of the constitution of the state on the first Tuesday after the first Monday in January following the election, or on such other date as may be specified in the amendment or revision.
SJR 2394's ballot title and summary statement, but not the text, appeared on the November 2004 general election ballot as Constitutional Amendment No. 2.
In appellants' Second Amended Complaint, filed on October 27, 2004, appellants raised three counts for Declaratory and Injunctive Relief alleging the following:
*670 Count I: The ballot summary for Constitutional Amendment No. 2 violated article XI, section 5 of the Florida Constitution because the summary did not (1) accurately notify the public that the time for authorizing a citizen's initiative to amend the constitution would be cut by five months, thereby, making the amendment process more difficult for citizens; (2) inform citizens that the amendment would eliminate the possibility that a citizen's initiative petition could be the subject of an earlier special election; and (3) inform electors that a legislatively backed proposed amendment could be voted on by Florida electors at an earlier special election, while a citizen backed proposed amendment would have to wait for the later general election.
Count II: The ballot summary for Constitutional Amendment No. 2 violated article XI, section 5(b) of the Florida Constitution because the summary was not published in local newspapers as required in the tenth and sixth weeks preceding the general election.
Count III: Section 101.161(1), Florida Statutes (2004), violates the equal protection clause of the Florida Constitution, as considered with article I, section I, of the Florida Constitution because the statute exempts the Legislature from the 75-word limit ballot summary requirement, while impermissibly requiring all citizen's initiative petitions to be constrained by the limit.
On November 2, 2004, Florida voters passed the proposed amendment. On April 3, 2006, appellee filed a Cross-Motion for Summary Judgment on the Second Amended Complaint and an Affidavit asserting (1) the summary adequately explained the proposed amendment's chief purpose and the burden of applying time-limits to citizen's initiative petitions; (2) the summary was not required to explain its limitation on citizen's initiative petitions submission through special election because there is no bar, and even if there were, special elections are exceedingly rare and the summary is not required to explain every detail or possible ramification of a proposed amendment; (3) although the proposed revision may not have been properly submitted for publication in a minority of Florida newspapers due to a one-day delay, the Secretary of State substantially complied with the notice requirement and, thus, under existing case law, summary judgment should be granted as to count II; (4) Florida's equal protection clause only applies to "natural persons," not branches of government or political action committees, and, thus, count III, alleging an equal protection violation based on the 75-word limit exception, should be dismissed because neither the defendant nor the plaintiff are "natural persons;" (5) plaintiff's equal protection challenge must be subject to only a rational basis scrutiny, which it clearly passes based on the compelling state interest in ensuring ballot integrity and a valid election process; (6) a joint resolution can be declared invalid only if it is in direct conflict with a constitutional mandate, which for the foregoing reasons, SJR 2394 is not; and (7) the voters cured any defects by passing the proposed revision. In support of this motion, appellee filed affidavits from agents of the Orlando Sentinel, Tampa Tribune, Tallahassee Democrat, (Daytona) News Journal, and Florida Times-Union.
On April 24, 2006, a hearing was held on the motions.[2] On September 1, 2006, the trial court entered a Final Summary Judgment for Defendant finding the following: (1) the proposed revision summary did not "hide the ball" from voters; the revision's *671 summary stated the revision's chief purpose and informed voters that the revision would impose burdens on the initiative process; (2) the Secretary of State substantially complied with the statutory publication and timing of notice. Namely, 67 county newspapers circulated the proposed revision with only four counties relying on nearby metropolitan areas. Further, while both parties concede the notice was untimely by days in some publications, the notices substantially complied with the statutory requirements and did not amount to a "November surprise;" and (3) section 101.161(1), Florida Statute's legislative exemption from the 75-word ballot summary limit is constitutional. The plaintiff's challenge is evaluated by the rational basis test. The Legislature has a state interest in the exemption because (1) the 75-word limitation ensures ballot integrity, and (2) joint resolutions may embrace more than one subject at a time, unlike citizen's initiatives; thus, the need to explain the proposed legislation with more than 75 words is necessary. Appellants seek review of this order.
Appellants first assert the ballot title and summary are misleading and fail to meet the requirements of section 101.161(1), Florida Statutes.
A ballot title and summary are required whenever a constitutional amendment is submitted for a vote to the electorate. Section 101.161(1), Florida Statutes (2004), codifies article XI, section 5 of the Florida Constitution's accuracy in proposed amendments requirement and serves as a "truth in packaging" law for ballot summaries. Armstrong v. Harris, 773 So.2d 7, 13 (Fla.2000).
Section 101.161(1), Florida Statutes (2004), provides:
Whenever a constitutional amendment . . . is submitted to the vote of the people, the substance of such amendment . . . shall be printed in clear and unambiguous language on the ballot. . . . [T]he substance of the amendment . . . shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . . The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
(Emphasis added). In Advisory Opinion to Attorney General re Independent Nonpartisan Commission, 926 So.2d 1218 (Fla. 2006), the supreme court considered a challenge to a ballot summary on grounds that the summary was misleading:
This Court has stated "that the ballot [must] be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982) (emphasis removed) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954)). While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment. Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla. 1986). The ballot must, however, give the voter fair notice of the decision he or she must make. Askew, 421 So.2d at 155. The purpose of section 101.161 is to ensure that voters are advised of the amendment's true meaning. In assessing the ballot title and summary, this Court should ask two questions, first, whether the ballot title and summary "fairly inform the voter of the chief purpose of the amendment," and second, "whether the language of the title and summary, as written, misleads the public." [Advisory Opinion to Attorney General re] Additional Homestead Tax Exemption, 880 So.2d [646] at 651 [(Fla. 2004)] (quoting [Att'y Gen. re] Right to *672 Treatment & Rehab. [for Non-Violent Drug Offenses], 818 So.2d [491] at 497 [(Fla.2002)], and [Advisory Opinion to the Attorney General re] Right [of Citizens] to Choose Health Care Providers, 705 So.2d [563] at 566 [(Fla.1998)]).
(Emphasis added).
In the instant case, appellants assert the summary and title violated section 101.161(1), Florida Statutes' "truth in packaging" requirements for the following reasons: (1) the ballot title, "Constitutional Amendments Proposed by Initiative," merely referenced the very general subject area of the proposed revision, and was, thus, overly broad; (2) the ballot title and summary's use of the term "amendments" rather than "revisions" misled the public into believing that set time-frames would only apply to proposed amendments rather than revisions;[3] (3) the ballot title and summary failed to inform the public that the set dates proposed would alter pre-existing time-frames; the summary misled the public to believe that these set time-frames were novel ideas which had not previously existed; and (4) the ballot title and summary failed to inform the public of the lengthy process involved in obtaining an advisory opinion from the supreme court; therefore, the electorate was not informed how the proposed deadlines would make the filing of citizen's initiatives a more difficult task.
We disagree with appellants' assertions for the following reasons. First, while appellants challenge the title's overbreadth, appellants fail to explain how the title mischaracterized the proposed revision's main purpose.[4] The point of an appellate brief is to present arguments in support of the points on appeal, and without further elucidation on the arguments, this court may not engage in meaningful appellate review. Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990). As such, without more, this court may not review appellants' assertions regarding the title's alleged overbreath.
Second, appellants' assertion that the use of the term "amendment" without reference to the term "revision" misled the voters by failing to inform the electorate of the legal distinction between the two terms is without merit. While appellants are correct that case law and the Florida Constitution apply distinct and unique definitions to the terms "amendment" and "revision," the average voter would likely not be apprised of this legal distinction.
Appellants cite to Smathers, 338 So.2d at 828-32, in support of their contention that the summary's use of the term amendment impermissibly misled voters to believe the deadlines would only apply to amendments rather than revisions. In Smathers, the court considered the Legislature's right to amend or revise the constitution and determined the Legislature was not entitled to place amendments wherever they saw fit to include them in the constitution; it was constrained to include amendments only in germane sections to the amendment's content. Id. at *673 829-32. While Smathers discussed the difference between proposed revisions and proposed amendments, the case does not stand for the proposition that the public is misled by the use of one term rather than the other in the proposed amendment's ballot summary, as argued by appellants. If anything, the case draws attention to the common misconception that the terms may be used interchangeably and supports a finding that the voting public likely does not distinguish between the two terms. The language sufficiently apprised voters that it dealt with proposed changes to the constitution. As such, it cannot be said SJR 2394's ballot summary misled the public in a way that "hid the ball" from the average voter. Armstrong, 773 So.2d at 18.
Third, appellants' contention that the ballot summary failed to explain to the voting public that SJR 2394 shortened an already existing period for the return of advisory opinions is unfounded. The previous constitutional provision on advisory opinions regarding proposed amendments required only that the Florida Supreme Court issue the opinion "expeditiously." There was no set date. As such, contrary to appellants' assertions, the proposed amendment did establish a previously, non-existent time certain for the return of advisory opinions.
However, appellants correctly assert that the proposed amendment did serve to shorten the established time period for the submission of a proposed citizen's initiative petition from approximately 3 months prior to the general election to approximately 9 months preceding the general election. Even in light of this fact, the trial court correctly found that the ballot title and summary appropriately apprised the electorate of the proposed revision's main purpose as required by Armstrong.
The title and summary specifically provided the "cut-off" date for a petition's filing. As such, the summary and title adequately apprised the electorate that the proposed amendment would serve to establish a cut-off date, 9 months prior to the general election, for the filing of a citizen's initiative petition. While appellants may take issue with the date's ramifications, questions that "go to the wisdom of adopting the amendment" should be left to the public. Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986). The summary did not "hide the ball" from Florida voters who were told exactly what limits passing the amendment would create. Armstrong, 773 So.2d at 18.
Fourth, appellants take issue with the fact that the ballot summary did not describe the process of receiving an advisory opinion and proposed ballot summary in detail, thereby, alerting the public to the revision's negative effects on citizen's initiatives. In order to submit a citizen's initiative to the Secretary of State, the sponsoring party must submit a requisite number of signatures. After 10% of the requisite signatures for the filing of a citizen's initiative petition have been collected and certified to the Secretary of State, the Attorney General is required to petition the Florida Supreme Court for an advisory opinion on the initiative's validity. Prior to the amendment's passing, the Florida Supreme Court was to rule "expeditiously" on the initiative's validity.
The Florida Supreme Court has stated, "it is not necessary to explain every ramification of a proposed amendment, only the chief purpose." Firestone, 497 So.2d at 1206. The "[i]nclusion of all possible effects [of proposed legislation] is not required in the ballot summary." Grose v. Firestone, 422 So.2d 303, 305 (Fla.1982). As discussed above, the ballot summary did not "hide the ball" from the voters. As *674 explained by the trial court in the order granting summary judgment: "the chief purpose of SJR 2394 was to alter the schedule for the citizen's initiative process, and that purpose was clearly reflected in the plain language of the ballot summary."
Appellants' next issue relates to whether proper notice was given to the public concerning the proposed revision. Article XI, section 5(d) of the Florida Constitution establishes a constitutional notice requirement for proposed amendments and provides as follows:
Once in the tenth week, and once in the sixth week immediately preceding the week in which the election is held, the proposed amendment or revision, with notice of the date of election at which it will be submitted to the electors, shall be published in one newspaper of general circulation in each county in which a newspaper is published.
(Emphasis added).
Appellants assert appellee did not provide notice as required by the Florida Constitution. Namely, appellants assert (1) appellee failed to publish the notice in four counties' hometown newspapers as required; and (2) appellee failed to publish the notices in a timely fashion. In response, appellees assert that, while the requirements may not have been expressly met, the notifications substantially complied with the requirements and, thus, the legislation should be upheld. In ruling on the matter, the trial court expressly stated:
I find that the major newspapers which circulated in 2004 in the four counties at issue provided the necessary notice, and substantial compliance . . . Similarly, there was substantial compliance with the timing of necessary publication . . . The defendant did not strictly comply with the above timing requirements, but her substantial compliance effectuated the purpose of the requirement.
As illustrated above, the text of article XI, section 5 outlines two notice requirements. The first being an established time-frame for notice publication and the second being a geographical publication requirement in each county of the State.
In State v. State Board of Education of Florida, 467 So.2d 294, 296 (Fla.1985), the Florida Supreme Court considered a similar challenge to the Secretary of State's failure to provide sufficient notice as required by article XI, section 5. In State Board of Education, the Secretary failed to circulate the pre-election publication of the proposed amendment in two counties. In considering the issue, the court relied heavily on the circuit court's analysis in the order granting summary judgment for the Secretary. Id. That analysis reads as follows:
Publication of proposed amendments being a formality, and not an essential element, of the procedure for amending the Florida Constitution, the publication of Amendment 8 in sixty-five of Florida's sixty-seven counties in the tenth week and the sixth week prior to the General Election of November 6, 1984, constitutes substantial compliance with the provisions of Article XI of the Florida Constitution; the fact that such notice was not published in newspapers of general circulation printed in Hamilton and Madison Counties constitutes harmless error, since, even assuming that all of the registered voters in Hamilton and Madison Counties had voted against Amendment 8, said amendment would have still been approved by an overwhelming majority of voters throughout the State. Furthermore, there has been no suggestion of fraud or bad faith in connection with the passage of Amendment 8, nor has any elector complained *675 to have been deprived of his right to vote in the said election. This Court therefore finds that the Public Education Bond Amendment was validly amended by a vote of the electors of the State of Florida at the general election of November 6, 1984, in accordance with Article XI of the Florida Constitution, and, therefore, the gross receipts taxes as defined by Chapter 203, Florida Statutes, including the amendment thereto contained in Chapter 84-342, Laws of Florida, constitute a legal source of payment for bonds issued pursuant to the Public Education Bond Amendment.
Id. (Emphasis added). As evidenced by the preceding language, the Florida Supreme Court adopted a substantial compliance formula when considering challenges to proposed amendments based on publication errors. Under this analysis, it appears appellee has substantially complied with the notice requirements in the present case.
Both parties concede the required publication was not printed in four Florida counties: Flagler, Gadsden, Highlands, and Osceola. However, both parties further concede that the notification was published in the surrounding metropolitan areas' newspapers, including: The Florida Times-Union (Flagler), The Tallahassee Democrat (Gadsden); The Tampa Tribune (Highlands); and The Orlando Sentinel (Osceola). Although appellee failed to publish the notices as expressly required in all Florida counties, the lack of proper notification in only four out of sixty-seven counties is not fatal to the legislation. Appellee has substantially complied with the geographical notice requirements set out in article XI, section 5 of the Florida Constitution. State Bd. of Educ. of Fla., 467 So.2d at 296.
Additionally, article XI, section 5 of the Florida Constitution requires the notices be published in the sixth and tenth weeks prior to the general election. Both parties concede that the notice publications were published in the sixth week and in the ninth week prior to the general election. Thus, appellee concedes the notice was not published as required by approximately one week's time. While State Board of Education did not consider the Secretary's failure to file timely publications, its reasoning suggests that a substantial compliance formula should be applied to such an oversight. 467 So.2d at 296. Under this standard, it appears appellee substantially complied with the notice requirements. Article XI, section 5's notice requirements were adopted in an effort to avoid a "November surprise." Armstrong, 773 So.2d at 11. The failure to publish the requisite notice by a matter of days does not amount to a voter surprise on the eve of election. Further, appellants do not contend the lack of notice was the result of bad faith or fraud. The voters were informed well before the general election of the proposed amendment. As such, appellee substantially complied with the notice requirements.
Finally, appellants claim that the legislative exemption from the 75-word ballot summary limitation is an unconstitutional denial of equal protection.
Specifically, appellants assert the trial court's finding that the 75-word limit served to guarantee ballot integrity was not supported by record evidence, and, thus, the grant of summary judgment was improper. However, empirical evidence is not required to support the finding of a reasonable relationship to a legitimate state interest. Vance v. Bradley, 440 U.S. 93, 110, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (rejecting challenger's assertion that the government had to present empirical evidence that the statute furthered legitimate *676 interests). Further, in Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the U.S. Supreme Court stated:
[S]tates are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker."
(citing Vance, 440 U.S. at 111, 99 S.Ct. 939).
The State asserts that the Legislature enacted section 101.161(1), Florida Statutes (2004), to ensure ballot integrity and a valid election process. A law which requires a minimum word limit on ballot summaries clearly insures ballot integrity by limiting the ballot to a workable and user friendly length.
To the extent appellants argue that section 101.161(1) as applied, is discriminatory, appellants must show (1) that they were treated differently under the law from similarly situated persons, (2) that the statute intentionally discriminates against appellants, and (3) that there was no rational basis for the discrimination. McElrath v. Burley, 707 So.2d 836, 839 (Fla. 1st DCA 1998). While section 101.161(1) exempts the Legislature from the 75-word limit, the statute does not rise to the level of unconstitutional discrimination.
First, the Legislature is not a "similarly situated" person to appellants. Appellants are private voting citizens while the Legislature is an elected body charged with the responsibility of creating new laws and amending existing law. Second, the constitutional process by which legislative proposals reach the ballot is substantially different from the process utilized for a citizen's initiative petition. Third, the lack of a single subject requirement (which is imposed on citizen's initiatives) makes legislative proposals clearly different requiring the Legislature have the freedom to adequately explain the proposed change in a more lengthy ballot summary. For all these reasons, it is apparent the challenged statute (1) applies to all similarly situated persons to appellants; (2) does not intentionally discriminate against appellants alone; and (3) passes a rational basis scrutiny. Accordingly, section 101.161(1), Florida Statutes, should not be invalidated as unconstitutional under the equal protection clause.
AFFIRMED.
BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] Sue. M. Cobb has replaced Glenda L. Hood as Secretary of State during the pendency of this appeal.
[2] This hearing has been omitted from the record.
[3] In support of this argument, appellants assert revisions differ from amendments in that revisions affect multiple constitutional sections, whereas amendments affect only one provision. Adams v. Gunter, 238 So.2d 824, 829 (Fla.1970) (holding that "where more than one section of the Constitution is to be amended it is called a revision. . . ."); Smathers v. Smith, 338 So.2d 825, 829 (Fla.1976) (analyzing the distinction between article XI, section 1 of the Florida Constitution's phrases "section amendment" and "article revision" and determining that the two terms are distinct and unique).
[4] The challenged title reads as follows: CONSTITUTIONAL AMENDMENTS PROPOSED BY INITIATIVE.